UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



GARY L. PETERSON,
    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,
    Defendant.

**DECISION & ORDER**
17-cv-6397-JWF

## Preliminary Statement

Plaintiff Gary L. Peterson ("plaintiff" or "Peterson") brought this action pursuant to Title II and XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits and supplemental security income. See Complaint (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 10, 13. For the reasons that follow, plaintiff's motion for judgment on the pleadings (Docket # 10) is **denied** and the Commissioner's motion for judgment on the pleadings (Docket # 13) is **granted**.

## Background and Procedural History

On June 4, 2012, plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning September 1, 2012. See Administrative Record, Docket # 8 ("AR") at 51. After the application was denied,

1

plaintiff timely requested a hearing. Id. Administrative Law Judge Joseph L. Brinkley ("the ALJ") held two video hearings on May 22, 2014 and October 23, 2014, respectively. AR at 65, 97. Plaintiff appeared and testified at both, appearing with counsel for the hearing on October 23, 2014. See AR at 67, 99. On January 22, 2015, the ALJ issued a decision, determining that plaintiff was not disabled under the Act. AR at 51-60. Plaintiff timely requested review by the Appeals Council, which was denied on March 24, 2016. AR at 7. This lawsuit followed. See Docket # 1.

## Discussion

Plaintiff's Intellectual Impairments: Plaintiff argues that the ALJ erred in failing to consider whether plaintiff met Listing 12.05(C) (intellectual disability) and in failing to order intelligence testing that could have confirmed whether plaintiff met this Listing. Pl.'s Mot. (Docket # 10-1), at 11-12. Plaintiff contends that where there is evidence in the record that implicates a listing, "it is the ALJ's obligation to at least consider whether the listing was met." Pl.'s Reply (Docket # 14), at 1 (emphasis in original). In support of his position, plaintiff points to: (1) plaintiff's participation in special education classes, AR at 104-05; (2) Dr. Richelle P. Cruz's diagnosis that plaintiff's estimated intelligence was below average, AR at 498, 503; and (3)

2

a diagnosis by Mitchell Kibler[1] from Spectrum Human Services ("Spectrum"), that plaintiff had rule out borderline intellectual functioning, AR at 566. Pl.'s Mot. (Docket # 10-1), at 11. At step three, the ALJ determined that plaintiff did not meet the requirements of the listed impairments in Listings 12.04 and 12.06 but did not mention Listing 12.05. AR at 55.

The ALJ did not err in failing to mention Listing 12.05(C). Claimants carry the burden of demonstrating that their impairments meet or are equal in severity to one of the listings, and claimants are required to show that their impairments meet each of the medical criteria set forth in the listing. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (impairment does not qualify if it "manifests only some of those criteria, no matter how severely"). To establish that a claimant meets Listing 12.05(C), the claimant must demonstrate: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) another severe physical or mental impairment." Green v. Colvin, 14-CV-6632P, 2016 WL 943620, at *9 (W.D.N.Y. Mar. 14, 2016) (quoting Miller v. Astrue, No. 3:07-CV-1093 (LEK/VEB), 2009 WL 2568571, at *4 (N.D.N.Y. Aug. 19, 2009)); see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

---

[1] Mitchell Kibler's profession is unclear from the record.

An ALJ is required to explain his determination that a claimant failed to meet or equal the listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the [l]istings." Green, 2016 WL 943620, at *8 (quoting Rockwood v. Astrue, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009)). Nevertheless, an ALJ's unexplained conclusion at step three may still be upheld where other portions of the decision and other "clearly credible evidence" demonstrate that the conclusion is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); see also Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112-13 (2d Cir. 2010); Otts v. Comm'r of Soc. Sec., 249 F. App'x 887, 889 (2d Cir. 2007).

Here, although the ALJ did not explain why plaintiff failed to meet Listing 12.05(C), there is substantial evidence to support the ALJ's conclusion, thus not triggering the ALJ's duty to consider that listing. First, the ALJ evaluated plaintiff's adaptive functioning by discussing his social skills, communication, and daily living skills, and correctly found it insufficient to trigger further discussion. "Adaptive functioning refers to an individual's 'ability to cope with the challenges of ordinary everyday life.'" Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012) (quoting Novy v. Astrue, 497 F.3d 708, 709 (7th Cir. 2007)). Social skills, communication, and daily living skills can all illustrate adaptive functioning. See Spaich v. Berryhill,

4

No. 1:15-cv-00274-MAT, 2017 WL 6014451, at *3 (W.D.N.Y. Dec. 5, 2017) (acknowledging that "[s]everal courts have concluded that a claimant's effectiveness in areas of social skills, communication, and daily living skills, also illustrate adaptive functioning," and citing cases); Webb v. Colvin, No. 12-CV-753S, 2013 WL 5347563, at *4 (W.D.N.Y. Sept. 23, 2013). Indeed, the court in Talavera cited examples of those skills in concluding that substantial evidence supported the ALJ's finding that the plaintiff had "not met her burden of establishing that she suffers from qualifying deficits in adaptive functioning." 697 F.3d at 153-54 (citing as evidence of adaptive functioning the plaintiff's ability to navigate public transportation without assistance; engage in productive social relationships; manage her own personal finances; use computers; the display of "fluent" speech; "coherent and goal-directed" thought processes and "appropriate" affect).

Here, in step three, the ALJ assessed four categories of functionality: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. AR at 55. He found mild to moderate limitations in the first three areas and no decompensation. AR at 55. In reaching his conclusion, the ALJ thoroughly discussed plaintiff's abilities including using public transportation, managing finances, and getting along with others. AR at 55. He also considered Dr. Finnity's consultative examination, which evaluated plaintiff's

5

appearance, affect, and other cognitive functions. AR at 55. Like in Talavera, 697 F.3d at 153-54, this evidence reflected that plaintiff had adequate adaptive functioning. See Jones v. Colvin, 6:16-CV-0044 (GTS), 2017 WL 3016839, at *7–8 (N.D.N.Y. July 14, 2017) (finding that the plaintiff did not demonstrate deficits in adaptive functioning where the ALJ considered the plaintiff's daily activities and the physician's report, assessed four categories of functionality, and found the plaintiff mildly limited in the first three functional areas and did not have any episodes of decompensation).

Second, the ALJ mentioned plaintiff's special education records, and correctly found that they were not enough to demonstrate qualifying deficits of adaptive functioning in light of his social, communication, and daily living skills. See Rodriguez v. Colvin, No. 13-CV-6360, 2014 WL 3882191, at *14 (W.D.N.Y. Aug. 6, 2014) (finding that an adaptive functioning determination was implicit in ALJ's finding that claimant's intellectual impairment imposed only minimal functional limitations). Although participation in special education classes or difficulties in reading or writing suggest deficits in adaptive functioning, "[t]he ability to live alone, care for others, prepare meals, pay bills, communicate, and perform other activities of daily living generally demonstrates adaptive functioning." See Gonzalez-Cruz v. Comm'r of Soc. Sec., 294 F. Supp. 3d 164, 185

(W.D.N.Y. 2018) (citations omitted); see also Trimm v. Comm'r of Soc. Sec., 7:15-CV-1006 (GTS/WBC), 2016 WL 7414531, at *6 (N.D.N.Y. Dec. 2, 2016) ("Courts, however, have also found that a plaintiff did not suffer from deficits in adaptive functioning where plaintiff could dress, bathe, manage money, communicate effectively, do simple math and take care of personal needs.").

Here, plaintiff could independently perform personal care, manage money, fix things around the house, do grocery shopping, laundry, and household chores. AR at 116, 119–20. He could also mow the lawn, work on cars, and testified that he enjoyed fishing. AR at 118–19. In addition, several notes in the medical record showed that plaintiff had normal thought content, fair memory and concentration, and intact judgment. See, e.g., AR at 336, 389, 395, 441. Moreover, plaintiff had worked full-time as a dishwasher and quit only because of transportation problems. AR at 115. If not for transportation, he would be able to work as long as he was not "around lots of people." AR at 115. Elsewhere in the record, plaintiff indicated that he thought that he "can still work" and even scheduled a job interview for January 25, 2014. AR at 402, 443. In light of the above evidence, plaintiff's special education record was insufficient to establish qualifying deficits of adaptive functioning. See Gonzalez-Cruz, 294 F. Supp. 3d at 186–87 (no qualifying deficits of adaptive functioning where the plaintiff had little education, was unable to read or write, but

nonetheless was able to engage in daily activities; had performed several jobs, including car washing, lawn work, and painting; and treatment records demonstrated normal thought processes, intact memory, and fair concentration); see also Trimm, 2016 WL 7414531, at *5-6 (no qualifying deficits of adaptive functioning where the plaintiff attended special education, but was able to dress, bathe, and groom himself, cook and prepare food, do general cleaning, manage money, drive, watch TV; enjoyed fishing, camping, and playing video games; quit jobs not due to mental impairments; and was looking for employment and wanted to work).

Third, the medical evidence in the record was also insufficient to show qualifying deficits in adaptive functioning. It is true that Mr. Kibler from Spectrum noted rule out borderline intellectual functioning, AR at 566, and Dr. Cruz estimated that plaintiff had below average intelligence, AR at 498, 503. However, such records were not enough to trigger the duty to order an intelligence testing. See Wallace v. Colvin, 120 F. Supp. 3d 300, 305 (W.D.N.Y. 2015) ("The Court is mindful that in general, passing references in the record to a claimant's low intelligence do not trigger an ALJ's obligation to order intelligence testing, particularly where other evidence of record, such as the claimant's education, work history, and activities of daily living, does not suggest a severe cognitive impairment."); see also Crawford v. Astrue, No. 13-CV-6068P, 2014 WL 4829544, at *24-25, (W.D.N.Y.

8

Sep. 29, 2014) (remand for I.Q. testing is manifestly unnecessary, despite scattered references in the record to "mild mental retardation," where plaintiff graduated from high school, maintained semi-skilled employment, read widely and managed her own finances). Instead, as discussed above, various medical sources stated that plaintiff had normal thought content, fair memory and concentration, and intact judgment. See, e.g., AR at 336, 389, 395, 441. Thus, the few references in the record were insufficient to trigger the ALJ's duty to further consider plaintiff's intelligence problems. See Crawford, 2014 WL 4829544, at *24 (citing, inter alia, Sneed v. Barnhart, 88 Fed. App'x 297, 301 (10th Cir. 2004) (stating that "[t]he isolated comments about [claimant's] possible limited intelligence . . . do not sufficiently raise a question about his intelligence")).

Finally, plaintiff himself alleged only anxiety, panic disorder, and adjustment disorder. AR at 333. He also testified that anxiety attacks and breathing problems were the symptoms that caused him to stop working. AR at 109-10. Plaintiff simply did not identify intellectual functioning deficits as a disabling condition before the ALJ made the decision. Consequently, the ALJ did not err in failing to further consider his intelligence problems. See Cox v. Astrue, 993 F. Supp. 2d 169, 178 (N.D.N.Y. 2012) (ultimately finding lack of substantial evidence for RFC on other grounds, but holding that the ALJ was not required to order

9

an intelligence examination where the physician noted borderline intellectual functioning but described his attention, concentration, and memory as intact, and where the plaintiff did not identify intellectual functioning deficits as a disabling condition).

Plaintiff failed to trigger the ALJ's duty to consider Listing 12.05(C) by presenting sufficient prima facie evidence implicating the Listing. And the ALJ's analysis contains enough information to enable this Court to determine that his finding was supported by substantial evidence. Therefore, the ALJ's failure to invoke Listing 12.05(C) does not require remand. See Berry, 675 F.2d at 469 (reasonably inferring from the evidence that Listings were inapplicable); see also Vargas v. Astrue, No. 09 Civ. 6606(BSJ)(DF), 2011 WL 9518014, at *12 (S.D.N.Y. Nov. 8, 2011) ("In situations where the ALJ's analysis contains enough information to enable this Court to determine whether he made the requisite findings, his failure to invoke an applicable standard does not, in itself, require remand.").

Duty to Develop Mental Health Record: Plaintiff also argues that the ALJ failed to develop mental health treatment notes from Spectrum. Pl.'s Mot. (Docket # 10-1), at 9. Specifically, plaintiff argues that he received one-to-one counseling treatment, including treatment with Jerry Turk, non-physician practitioner from Spectrum, yet the medical records from Spectrum contained no

such treatment notes on plaintiff's mental health issues. Id. at 10. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform medium work, except that he "must avoid greater than moderate exposure to environmental irritants;" "must avoid concentrated exposure to wetness, vibrations, extreme hot and cold temperatures, and workplace hazards;" "is limited to simple, routine, repetitive tasks; can understand, remember, and complete simple work instructions;" "is limited to frequent superficial contact with the general public;" can occasionally perform team work; and "cannot perform work involving fast-paced assembly lines or high volume production quotas." AR at 56.

I disagree with plaintiff. Although an ALJ has the affirmative duty to develop the record, the ALJ's duty to develop the record is not "infinite." See Tatelman v. Colvin, 296 F. Supp. 3d 608, 612 (W.D.N.Y. 2017). When "evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary." See id. (quoting Kinslow v. Colvin, No. 5:12-cv-1541 (GLS/ESH), 2014 WL 788793, at *4 n.10 (N.D.N.Y. Feb. 25, 2014)); see also Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (where there are no "obvious gaps" in the record, the ALJ is not obligated to seek additional information).

Here, the ALJ fulfilled his duty to develop as there was no obvious gap in the record. To begin with, plaintiff's main argument is that many of the progress notes were from initial psychiatric

11

reviews and medication monitoring even though the record indicated further counseling treatments with Spectrum. Pl.'s Mot. (Docket # 10-1), at 10. However, regardless of the particular types of the treatment notes, the notes contained sufficient evidence of plaintiff's subjective and objective psychological conditions during the relevant period. The two initial evaluation progress notes respectively from Dr. Gupta in March 2013 and Mr. Turk in July 2013, both reviewed plaintiff's medical history, estimated his mental status, monitored his medication, and consistently diagnosed plaintiff with panic disorder. AR at 395-96, 398-99. These notes "essentially serve as a summary of [plaintiff's] treatment." See Walker v. Astrue, No. 11-CV-766S, 2012 WL 4473249, at *3 (W.D.N.Y. Sep. 26, 2012) (finding that there was no gap in the record where the ALJ did not have full treating notes but had two reports that explained the plaintiff's treatment history, medical issue, use of medication, and the progress that she has made).

In addition, two other progress notes completed by Mr. Turk in October 2013 and January 2014, together with the psychiatry examination results from Oak Orchard Health in July and September 2014, consistently acknowledged plaintiff's anxiety problem by either diagnosing him with anxiety or noting that he was "less anxious." AR at 441, 443, 510, 514. These records were consistent with Dr. Finnity's diagnosis of anxiety disorder and panic disorder

12

to which the ALJ gave significant weight. AR at 58. Thus, they further supported the ALJ's RFC determination, which took into account the effect of plaintiff's anxiety and panic disorders. AR at 56. In light of the above, the ALJ had no obligation to obtain additional treating records. See Perez v. Chater, 77 F.3d 41, 47–48 (2d Cir. 1996) (finding that the ALJ satisfied his duty to develop the record when the ALJ considered the treating physician's report and it accorded with the ALJ's ultimate determination); see also Gonzalez v. Colvin, 15 Civ. 5011 (KPF), 2016 WL 6780000, at *18-19 (S.D.N.Y. Nov. 16, 2016) (finding that the ALJ had no further obligation to develop the record where the letters in the medical record supported the ALJ's decision).

Moreover, in October 2014, plaintiff testified at the hearing that he was treated at Spectrum for anxiety "last year" and that he has already "stopped seeing their doctors [at Spectrum]" for anxiety. AR at 110, 112. As discussed above, the progress notes from Spectrum recorded plaintiff's mental conditions throughout March 2013 to January 2014. AR at 395–96, 398-99, 441, 443. Therefore, plaintiff's own allegation and the evidence in the record both suggest that any potential missing notes could hardly contain anything not already addressed in the medical record. It follows that the ALJ has discharged his duty to develop the record. See Tatelman, 296 F. Supp. 3d at 612 (finding that the ALJ has fulfilled the duty to develop the record where the plaintiff did

not allege, nor was there evidence to otherwise suggest, that additional records would have contained any findings or evidence not already accounted-for in the 150 pages of medical documentation in the record); see also Gonzalez, 2016 WL 6780000, at *18 (finding no duty to develop the record where "there is again nothing to indicate that these [absent] records in any way suggested that Plaintiff could not . . . perform sedentary work").

Finally, during the hearing, the ALJ asked plaintiff's counsel whether the record contained all information. AR at 101. When counsel stated that there might be one additional medical source statement, the ALJ ensured counsel that he would definitely include any other medical resource statements. AR at 102. Counsel neither objected to the record nor required any assistance from the ALJ, suggesting that the ALJ had already considered and properly dealt with the issue of developing the record. See Jordan v. Comm'r of Soc. Sec., 142 Fed. App'x 542, 543 (2d Cir. 2005) (summary order) (finding that the ALJ fulfilled his duty to develop the record where counsel volunteered to obtain documents from the plaintiff's treating physician; the ALJ kept the record open to allow counsel to submit the documents; counsel later advised that he had "nothing further to add"; and counsel did not request the ALJ to help him obtain the documents); see also Eusepi v. Colvin, 595 Fed. App'x 7, 9 (2d Cir. 2014) (finding that the ALJ fulfilled his duty to develop the record where the plaintiff's counsel

14

requested and obtained an additional two weeks to secure additional medical records, representing that the matter was ready to be taken under advisement by the ALJ).

## Conclusion

For the above reasons, the Commissioner's motion for judgment on the pleadings (Docket # 13) is **granted**, plaintiff's motion for judgment on the pleadings (Docket # 10) is **denied**, and plaintiff's complaint (Docket # 1) is **dismissed with prejudice**.

IT IS SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 4, 2018
       Rochester, New York